# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **GARRICK PENNINGTON,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | **Case No.: 7:22-cv-01265-ACA** |
| ] | |
| **TUSCALOOSA COUNTY, ALABAMA,** ] | |
| **et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## **MEMORANDUM OPINION AND ORDER**

While detained at the Tuscaloosa County Detention Center, Plaintiff Garrick Pennington was attacked in his cell by fellow inmates. The attack left Mr. Pennington bleeding, with black eyes and a swollen face and head. Despite telling two detention center employees that he needed medical attention, Mr. Pennington did not receive medical care until his mother picked him up from the jail four days later and took him to the hospital.

Mr. Pennington, a hearing-impaired Caucasian, filed this lawsuit against Tuscaloosa County, Tuscaloosa County Sheriff Ron Abernathy, and an unidentified number of fictitious defendants alleging that each of them violated his rights under federal and state law.

Specifically, Mr. Pennington's complaint asserts that "Tuscaloosa County Detention Center Officials" failed to protect him, in violation of the Fourth and Fourteenth Amendments ("Count One"), failed to provide access to necessary medical treatment, and deprived him of his right to be free from unreasonable seizures ("Count Two"); and that both the County and Sheriff Abernathy failed to supervise and train detention center employees and staff ("Count Three"). Mr. Pennington brings Counts One and Three pursuant to 42 U.S.C. § 1983. Count Two is brought pursuant to the Alabama Constitution. Mr. Pennington also claims that the County discriminated against him and failed to accommodate his disability, in violation of the Title II Americans with Disabilities Amendments Act, 42 U.S.C. §§ 12131, *et seq.* ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Count Four"). He also asserts that all defendants were negligent, in violation of Alabama law ("Count Five"). (Doc. 1 at 9–17).

Tuscaloosa County moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and seeks attorney's fees pursuant to 42 U.S.C. § 1988. (Doc. 7). Sheriff Abernathy also moved to dismiss pursuant to Rule 12(b)(6), or in the alternative, for a more definite statement pursuant to Rule 12(e). (Doc. 19).

The court considered these motions and **GRANTS** Tuscaloosa County's motion to dismiss because the complaint neither adequately describe the fictitious

defendants nor states a claim against it. But the court declines to exercise its discretion under § 1988 and **DENIES** Tuscaloosa County's request for attorney's fees.

The court also **DENIES** Sheriff Abernathy's motion to dismiss but **GRANTS** his alternative motion for a more definite statement. The court **ORDERS** Mr. Pennington to file an amended complaint in conformity with Federal Rules of Civil Procedure 8(a)(2) and 10(b), as well as the Eleventh Circuit's instructions about properly pleading a complaint.

## I. BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

The Tuscaloosa County Detention Center detained Mr. Pennington, a hearing-impaired Caucasian, for about three weeks in the fall of 2020. (Doc. 1 at 1, 5–6, ¶¶ 10–12, 7 ¶ 21). During Mr. Pennington's incarceration, "[r]acial tensions in this country, generally, and in the deep South, especially, [were] at a fever pitch, given the recent slaying of George Floyd." (*Id.* at 9 ¶ 33).

One evening while sitting at a table in the dining facility with his head down, a group of African American inmates started banging on the table. (*Id.* at 6 ¶ 13). Mr. Pennington asked the inmates to stop, but they refused. (*Id.*). Mr. Pennington

then started to walk back to his cell when some unidentified inmate struck him in the back of the head. (Doc. 1 at 6 ¶ 14). Instead of confronting the inmate, Mr. Pennington walked back to cell and laid down on his bunk. (*Id.* at 6 ¶¶ 14–15). Soon after, at least four African American inmates pulled Mr. Pennington from his bunk and beat him savagely. (*Id.* at 6 ¶ 15–16). Mr. Pennington suffered heavy bleeding, two black eyes, and a swollen face and head. (Doc. 1 at 6 ¶ 16).

After this assault, Mr. Pennington requested medical attention and was taken to another room. (*Id.* at 6–7 ¶ 17–18). There, a staff nurse confirmed Mr. Pennington wanted medical attention. (*Id.* at 7 ¶ 19). Despite the request, Mr. Pennington did not receive medical care for his injuries until he was released from custody four days later. (Doc. 1 at 7 ¶¶ 21–22). Mr. Pennington claims to have a permanent back injury and additional hearing loss in left ear because of the assault. (*Id.* at 8 ¶ 25).

## II. DISCUSSION

### 1. Tuscaloosa County's Motion to Dismiss

Tuscaloosa County moves to dismiss all claims asserted against it and the fictitious defendants for failure to state a claim. (Docs. 7, 7-1). "To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For clarity, the court will begin with the claims asserted against the fictitious defendants and then analyze the claims asserted against Tuscaloosa County.

    *a.*    *Fictitious Defendants*

The complaint names fictitious defendants as parties to Counts One, Two, and Five. (Doc. 1 at 9–11, 16–17).

Generally speaking, "fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). The limited exception to this rule is when the plaintiff "adequately describe[s] the person to be sued so that the person c[an] be identified for service." *Dean v. Barber*, 951 F.2d 1210, 1215 n.6 (11th Cir. 1992) (reversing district court's decision to deny motion to add a fictitious defendant because the allegations demonstrated that only one person held the position in question); *Richardson*, 598 F.3d at 738 (explaining that fictitious party pleading is permitted "when the plaintiff's description of the defendant is so specific that using the defendant's proper name is "at the very worst, surplusage") (quotation marks omitted).

Mr. Pennington's complaint refers to the fictitious defendants by general terms. In the section of the complaint identifying the parties, Mr. Pennington describes the fictitious defendants as "the deputy sheriffs and Tuscaloosa County employees and/or agents on duty who had responsibility for monitoring and

maintaining order in the respective cell block at the time" of the attack and "each Tuscaloosa County deputy sheriff, employee, and/or agent member who refused to provide" him with medical attention after the assault. (Doc. 1 at 4 ¶ 6). This is insufficient to show to fall within the limited exception to the general rule that prohibits fictitious party pleading. *See Richardson*, 598 F.3d at 738 (affirming district court's *sua sponte* dismissal of fictitious defendant identified in the complaint as "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute" because that description "was insufficient to identify the defendant among the many guards employed" at the correctional institute).

Accordingly, the court **GRANTS** the motion to dismiss Counts One, Two, and Five against the fictitious defendants and **DISMISSES** those counts **WITHOUT PREJUDICE** insofar as they name fictitious defendants.

> b. *Tuscaloosa County*

The complaint asserts three claims against Tuscaloosa County: that Tuscaloosa County and Sheriff Abernathy failed to train or supervise employees; discrimination by the County against Mr. Pennington and its failure to accommodate his disability; and a common law negligence claim. (Doc. 1 at 11–17). The claims Mr. Pennington asserts against Tuscaloosa County are based on the operational management of the Tuscaloosa County Detention Center, the supervision or training of the facility employees, and alleged failure of facility employees to provide

adequate medical care. (*See e.g., id.* at 5 ¶ 23, 10 ¶ 38, 12 ¶¶ 43–46, 13 ¶ 49, 14–16 ¶ 60, 16 ¶ 64). Mr. Pennington claims that the County is liable for damages because it "is responsible for the acts and/or omissions of its employees and agents taken in the scope of their employment and is responsible for adequately training its employees on the statutory and constitutional requirements of their authority." (Doc. 1 at 3 ¶ 4).

Tuscaloosa County argues that Mr. Pennington's claims against it fail to state a claim upon which relief may be granted because (1) it is has no responsibility for the daily operations of the jail; and (2) it cannot be held liable under a theory of respondeat superior for the actions of sheriff's employees because they are state officials, over which it has no supervision. (Doc. 7-1 at 2–5). The court agrees.

Under Alabama law, "counties possess only those powers expressly delegated to them by the legislature." *Ex parte Sumter Cnty.*, 953 So. 2d 1235, 1238 (Ala. 2006). The only responsibility a county has to its jail is to maintain it, Ala. Code § 11-14-10, which has been construed as requiring "the county commission to keep a jail and all equipment therein in a state of repair and to preserve it from failure or decline." *Keeton v. Fayette Cnty.*, 558 So. 2d 884, 886 (Ala. 1989); *Ex parte Sumter Cnty.*, 953 So. 2d at 1238 (finding that a county "cannot be held liable for any action resulting from the hiring, training, or supervising of jail personnel"). The responsibility for daily administration or operation of a county jail and its inmates

belongs to the sheriff. Ala. Code § 14-6-1 ("The sheriff has the legal custody and charge of the [county] jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein. . . .), *held unconstitutional on other grounds by Parker v. Amason*, 519 So. 2d 442, 446 (Ala. 1987) (finding § 14-6-1 unconstitutional "[t]o the extent it purports to impose civil liability on a sheriff for the acts of a jailer appointed by the sheriff"); *see also Turquitt v. Jefferson Cnty.*, 137 F. 3d 1285, 1289 (11th Cir. 1998).

In addition, Alabama counties may not be held liable for the actions of sheriffs or his employees in the execution of their law enforcement duties because they are state officials and not county employees. *See Turquitt*, 137 F.3d at 1288 (explaining that "an Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail" and therefore, an Alabama county is not liable under § 1983 for injuries to inmates based on a sheriff's management of a jail); *Ex parte Sumter Cnty.*, 953 So. 2d at 1239 (affirming dismissal of claims against a county based on alleged acts of sheriff and deputies who worked at the jail because Alabama sheriffs and deputies are state employees).

Mr. Pennington does not dispute these legal principles, but he contends that counties may be liable for failure to adequately maintain the jail and its equipment. (Doc. 17 17 at 2–3). He argues that the court ran reasonably infer from his factual

allegations "that the County's security equipment [i.e. video cameras or other surveillance equipment] failed or was in a state of disrepair and that equipment failure led to Pennington's vicious assault." (*Id.* at 3 ¶ 9). Contrary to Mr. Pennington's assertion, the complaint contains no facts plausibly suggesting that Tuscaloosa County failed to furnish and maintain the jail or that any equipment failure caused Mr. Pennington's injuries. (*See generally* doc. 1). Nor does the complaint contain any facts from which the court could make any such reasonable inferences.

Accordingly, Counts Three, Four, and Five do not state a claim against Tuscaloosa County. The court **GRANTS** Tuscaloosa County's motion to dismiss and **DISMISSES WITHOUT PREJUDICE** Counts Three and Five insofar as they name Tuscaloosa County as a defendant and Count Four in its entirety.

As part of its motion to dismiss, Tuscaloosa County argues that it is entitled to an award of attorney's fees under § 1988 because Mr. Pennington's complaint against it "is frivolous, unreasonable, or without foundation." (Doc. 7-1 at 5). Under § 1988, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 1988(b). The Eleventh Circuit has explained that a court may award fees under § 1988 to prevailing defendants "only when [they] are forced to defend suits having no legal or factual basis," meaning the court must find "that the plaintiff's action was frivolous, unreasonable, or without foundation, even

9

though not brought in subjective bad faith." *Beach Blitz Co. v. City of Miami Beach*, 13 F.4th 1289, 1296–97 (11th Cir. 2021). Tuscaloosa County offers no specific argument in support of such a finding. Therefore, the court declines to exercise its discretion to award fees in this case and **DENIES** Tuscaloosa County's request for fees.

    2.    <u>Sheriff Abernathy's Motion to Dismiss, or Alternatively, Motion for a More Definite Statement</u>

The complaint asserts at least two claims against Sheriff Abernathy. Count Three asserts that Sheriff Abernathy failed to train and supervise his employees, in violation of Mr. Pennington's Fourth and Fourteenth Amendment rights. (Doc. 1 at 11–13). Count Five asserts a common law negligence claim under Alabama law. (*Id.* at 16–17). Although unclear from the face of the complaint (*see id.* at 9–11), Mr. Pennington suggests that he also asserts Counts One and Two against Sheriff Abernathy (doc. 22 at 4).

Sheriff Abernathy moves to dismiss Mr. Pennington's complaint under Rule 12(b)(6), arguing it is a shotgun pleading. Alternatively, he moves the court for a more definite statement pursuant to Rule 12(e). (Docs. 19–20). The court agrees with Sheriff Abernathy that the complaint is a shotgun pleading, but instead of dismissing the complaint, the court will give Mr. Pennington an opportunity to provide a more definite statement of his claims because as currently pleaded, the complaint "is so

vague or ambiguous" that Sheriff Abernathy "cannot reasonably prepare a response." *See* Fed. R. Civ. P. 12(e).

The Eleventh Circuit has "filled many pages of the Federal Reporter condemning shotgun pleadings and explaining their vices." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018); *see also Est. of Bass v. Regions Bank*, 947 F.3d 1352, 1356 n.3 (11th Cir. 2020) ("As of 2008, [the Eleventh Circuit] had explicitly condemned shotgun pleadings upward of fifty times.") (quotation marks omitted); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015) (stating that as of 2015, the Eleventh Circuit had published more than sixty opinions about shotgun pleadings).

Shotgun pleadings fall into "four rough types or categories." *Weiland*, 792 F.3d at 1321. The first "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third is one that does "not separate[e] into a different count each cause of action or claim for relief." *Id.* at 1323. And the fourth complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for

which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323.

Mr. Pennington argues that his complaint is not a shotgun pleading and that Sheriff Abernathy's motion to dismiss and for a more definite statement "impermissibly exalts style over substance" (doc. 22 at 3) because the complaint "adequately put[s] him on notice of the specific claims against him and the factual allegations that support those claims" (*id.* at 4). The court disagrees. Mr. Abernathy's complaint is a shotgun pleading of the first, third, and fourth types.

Mr. Pennington's complaint is eighteen pages long and contains sixty-nine numbered paragraphs and various lettered sub-paragraphs. (Doc. 1). Each count in the complaint impermissibly incorporates by reference every preceding paragraph. (*Id.* at 9 ¶ 30; 11 ¶¶ 40, 42; 13 ¶ 51; 16 ¶ 62). This is problematic because as currently pleaded, the factual and legal basis for each count is incorporated into every other successive count, making the final negligence claim "a combination of the entire complaint." *Weiland*, 792 F.3d at 1321. This makes "it nearly impossible" for the Sheriff Abernathy or the court "to determine with any certainty which factual allegations give rise to which claims for relief." *Jackson*, 898 F.3d at 1356; *see also id.* (explaining that a twenty-eight-page compliant that "incorporated all 123 paragraphs of allegations" into all counts was "neither 'short' nor 'plain'" as required by Rule 8(a)(2)); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359

n.9 (11th Cir. 1997) (noting that a four-count complaint where each count incorporated by reference all "forty-three numbered paragraphs of factual allegations" was "an all-too-typical shotgun pleading").

Mr. Pennington suggests that his complaint passes muster under *Weiland*. But in *Weiland*, each count re-alleged only all of the factual allegations contained in the complaint (not every allegation in each preceding count) which the Eleventh Circuit found gave the defendants adequate notice of the factual allegations that supported the claims against them. *Weiland*, 792 F.3d at 1324–25. That is not the problem with Mr. Pennington's complaint. His complaint does more than re-allege each factual allegation in each count; the allegations of each count are "rolled into every successive count down the line" making the complaint a shotgun pleading of the first type. *Id.* at 1324.

In addition, Mr. Pennington's complaint does not appear to separate some causes of action against Sheriff Abernathy into separate counts. For example, Count One is titled "Unconstitutional Use/Failure to Provide Adequate Protection to Pre-Trial Detainees (42 U.S.C. § 1983) in Violation of the Fourth and Fourteenth Amendments to the Constitution of the United States." (Doc. 1 at 9). The heading of Count One and certain factual allegations contained within the count (*see id.* at 9 ¶ 31, 34–35; 10 ¶¶ 35, 38.a.) suggest that Mr. Pennington attempts to bring a claim for failing to protect him from the attack by his fellow inmates in deliberate indifference

to his Fourteenth Amendment rights. Yet Count One also alleges that unnamed defendants "violated [his] right to be free from unreasonable seizure." (*Id.* at 10 ¶ 36). Count One also alleges unnamed defendants "denied [Mr. Pennington] adequate medical treatment" (*id.*) and failed "to adequately respond to [Mr. Pennington's] medical needs after he was severely beaten" (doc. 1 at 10 ¶ 38.b.). Count One also references an alleged violation of "due process of law." (*Id.* at 11 ¶ 39).

To the extent Mr. Pennington is attempting to assert a failure to protect, unreasonable seizure, denial of medical care, and due process claim in one count, this is an impermissible pleading practice. *See Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996) (noting that a complaint stating multiple theories of relief within each cause of action was "framed in complete disregard of the principle that separate, discrete causes of action should be plead in separate counts"); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366–67 (11th Cir. 1996) (explaining that the failure to "present each claim for relief in a separate count, as required by Rule 10(b)" makes the complaint a shotgun pleading). To the extent that is not his intent, the manner in which Count One currently is pleaded makes it impossible to determine which of those claims are actually asserted and the precise factual basis for the claim(s).

Count Two suffers from the same deficiencies for the same reasons. For example, it alleges violations of the Alabama Constitution but then references both

"fail[ure] to provide access to necessary medical treatment" and Mr. Pennington's "right to be free from unreasonable seizures." (Doc. 1 at 11 ¶ 41). Count Two appears to assert causes of action based on different sections or amendments to the Alabama Constitution, and like Count One, does not provide the specific factual basis for either claim.

Finally, the complaint asserts multiple claims against multiple defendants without specifying which defendants are responsible for the conduct giving rise to the claims or the defendants against which each claim is asserted. For instance, Counts One and Two are asserted against "Defendants Tuscaloosa County Detention Center Officials in their Individual Capacity." (*Id.* at 9, 11). But which detention center officials? The fictitious defendants only or both the fictitious defendants and Sheriff Abernathy? Given that the complaint specifically names Sheriff Abernathy specifically in Count Three (*see id.* at 11), it is unclear whether the failure to name him in Counts One and Two is intentional or whether he and the court are left to infer that he is among the unnamed detention center officials listed in Counts One and Two.

Counts One, Two, and Five also fail to specify which acts or omissions are attributable to which defendant. The counts refer to groups of defendants collectively without identifying which defendant is responsible for the specific conduct giving

rise to the claims. (*See e.g., id.* at 10 ¶ 36–39, 11 ¶ 41, 16 ¶¶ 63–69). Therefore, Sheriff Abernathy is not on notice of what acts or omissions are attributable to him.

In addition to these deficiencies, Mr. Pennington's complaint does not put Sheriff Abernathy on notice of the capacity in which he is sued. The caption to the complaint names Sheriff Pennington as a defendant in both his individual and official capacities. (Doc. 1 at 1). But the section of the complaint identifying the parties and the heading of Count Three identifies suggest that Sheriff Abernathy is being sued in his individual capacity only. (*Id.* at 3 ¶ 5, 11).

Mr. Pennington's complaint is the type of vague and ambiguous claim to which Sheriff Abernathy cannot meaningfully prepare a responsive pleading. Accordingly, the court **GRANTS** Sheriff Abernathy's motion for a more definite statement.

### III. CONCLUSION

The court **GRANTS** Tuscaloosa County's motion to dismiss. (Doc. 7). The court **DISMISSES WITHOUT PREJUDICE** Counts One, Two, and Five to the extent they are asserted against fictitious defendants. The court **DISMISSES WITHOUT PREJUDICE** Counts Three and Five to the extent they are asserted against Tuscaloosa County and Count Four in its entirety. The court **DENIES** Tuscaloosa County's request for attorney's fees.

The court **DENIES** Sheriff Abernathy's motion to dismiss but **GRANTS** his alternative motion for a more definite statement. (Doc. 19).

**On or before April 5, 2023**, Mr. Pennington **SHALL** file an amended complaint in compliance with the Federal Rules of Civil Procedure and the Eleventh Circuit's instructions on proper pleading.

The amended complaint must contain a <u>separate count for each claim that describes the factual basis for that claim only</u>. In addition, each count's heading must identify: (1) the <u>specific Defendant(s)</u> against whom the claim is asserted, and (2) the statute or law under which the claim is brought.

If a particular count is asserted against multiple defendants, the count must also describe the factual basis for the claim against each defendant individually. In other words, if a count is asserted against multiple defendants, the count must specify the acts or omissions of <u>each</u> defendant in a way that clearly provides notice of the basis for the claim.

The amended complaint must include all of Mr. Pennington's claims in this action and must not refer back to the original complaint. The court will consider only claims and factual allegations set forth in the amended complaint.

Failure to file an amended complaint that fully complies with this order may result in dismissal of this action for failure to prosecute. Filing another shotgun pleading will result in dismissal with prejudice without further notice. *See Jackson*,

898 F.3d at 1358 ("What matters is function, not form: the key is whether the plaintiff had fair notice of the defects and a meaningful chance to fix them. If that chance is afforded and the plaintiff fails to remedy the defects, the district court does not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds."); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1297 (11th Cir. 2018) ("The district court sua sponte gave [the plaintiff] an opportunity to correct the shotgun pleading issues in his complaint, and provided him with specific instructions on how to properly do so. He did not fix it. We will not adopt a rule requiring district courts to endure endless shotgun pleadings.").

The court reminds Mr. Pennington that if he chooses to file an amended complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678. As currently pleaded, many of Mr. Pennington's allegations are just that. (*See, e.g.,* doc. 1 at 10–11 ¶¶ 37–39, 11 ¶ 41, 12 ¶¶ 43–46, 12–13 ¶ 47, 13 ¶¶ 48–50, 14–15 ¶¶ 60.a.–60.d., 16 ¶¶ 63, 64.a.–64.c., 16–17 ¶¶ 64.d., 17, ¶¶ 65–69). Although the complaint contains some well-pleaded facts about Mr. Pennington's incarceration and the underlying assault, the complaint does not plead any non-conclusory facts about the conduct of the named defendants sufficient to state a claim. To state a claim for relief, Mr. Pennington must provide <u>facts</u> about what each defendant did or did not do that give rise to his claims. *See Twombly*, 550 U.S. at 555 ("[A]

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (cleaned up).

    **DONE** and **ORDERED** this March 22, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE