## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **GARRICK PENNINGTON,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 7:22-cv-1265-ACA** |
| | ] | |
| **TUSCALOOSA COUNTY,** | ] | |
| **ALABAMA, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

After an assault by fellow inmates while in pretrial detention at the Tuscaloosa County Jail, Plaintiff Garrick Pennington brought this action under 42 U.S.C. § 1983 and state law against Defendants Sheriff Ron Abernathy, in his individual and official capacities; Tuscaloosa County, Alabama; and fictitious defendants employed by Tuscaloosa County, including deputy sheriffs and a duty nurse. (Doc. 1; doc. 27 ¶¶ 32–144).

Mr. Pennington alleges that Sheriff Abernathy violated his Fourth Amendment right to be free from unreasonable seizures, his Fourteenth Amendment right to due process, and state law by failing to provide adequate protection and medical care to Mr. Pennington after the assault (doc. 27 ¶¶ 32–89), and by failing to adequately supervise and train employees (*id.* ¶¶ 118–26). Additionally,

Mr. Pennington asserts similar claims against fictitious defendants. (*Id.* ¶¶ 90–117, 127–140). And he asserts a claim against Tuscaloosa County for failing to maintain the jail and provide operational surveillance equipment. (*Id.* ¶¶ 141–144).

For the reasons below, the court **WILL GRANT IN PART** and **WILL DENY IN PART** the motions for summary judgment before it. The Eleventh Amendment bars Mr. Pennington's federal claims against Sheriff Abernathy in his official capacity, so the court **WILL DISMISS** those claims **WITHOUT PREJUDICE** for lack of subject matter jurisdiction. The court **WILL GRANT** Sheriff Abernathy's motion for summary judgment as to Mr. Pennington's federal claims against Sheriff Abernathy in his individual capacity, and **WILL ENTER SUMMARY JUDGMENT** in favor of Sheriff Abernathy as to those claims. And the court **WILL DISMISS** Mr. Pennington's federal claims against fictitious defendants **WITH PREJUDICE** for failure to sufficiently describe such fictitious defendants.

Because the court resolves the only claims over which it has original jurisdiction, the court **WILL DECLINE** to exercise supplemental jurisdiction over Mr. Pennington's state law claims against Sheriff Abernathy, the fictitious defendants, and Tuscaloosa County. The court **WILL DISMISS** those claims **WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3). Therefore, the court **WILL DENY AS MOOT** Sheriff Abernathy's motion for summary judgment on

2

the state law claim against him and Tuscaloosa County's motion for summary judgment. (Doc. 42 at 2; doc. 44).

## I.    BACKGROUND

In deciding a motion for summary judgment, the court is "required to view the evidence and all factual inferences therefrom in the light most favorable to [Mr. Pennington], and to resolve all reasonable doubts about the facts in [his] favor." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1341 (11th Cir. 2022) (quotation marks omitted; alterations accepted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the non-movant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not even be what a jury at trial would, or will, determine to be the facts.").

In September 2020, Mr. Pennington was arrested in Birmingham, Alabama and was placed in the Tuscaloosa County Jail. (Doc. 43-1 at 20). Mr. Pennington's arrest was only a few months after the death of George Floyd, during which period there was national racial tension. (Doc. 58 at 3; doc. 60 at 2). Several days after his arrest, Mr. Pennington tested positive for COVID-19 and was placed in Dorm 11 along with other pretrial detainees who tested positive. (Doc. 43-1 at 25–26). The

proportion of African American to Caucasian pretrial detainees in Dorm 11 at this time was near five to one. (*Id.* at 31).[1]

In Dorm 11, Mr. Pennington felt ill and was resting his head on a common table. (Doc. 43-1 at 30). Another pretrial detainee who was African American was thumping on the table. (*Id.* at 30, 33; doc. 43-6 at 85). Mr. Pennington and the other detainee had a verbal altercation about the noise. (Doc. 43-1 at 30). When Mr. Pennington got up from the table to return to his bunk, the other detainee struck him in the back of the head, at which point Mr. Pennington cursed at him. (*Id.*). After Mr. Pennington's remark, that individual and two or three others, all African American, grabbed Mr. Pennington from his bunk and beat him, resulting in a black eye, swelling to his right cheek, a knot on the side of his head, a broken nose, and a broken jaw. (*Id.* at 30, 33; doc. 43-10). Prior to the assault, Mr. Pennington had no issues with his assailants or anyone else in the jail. (*Id.* at 31–32).

After about ten minutes, jail staff entered the dorm and took Mr. Pennington to a duty nurse for a medical examination. (Doc. 43-1 at 32–33; doc. 43-10 at 2). At the time of the assault, the jail's medical services were provided by Whatley Health Services, Inc., which made decisions on medical care provided to

---

[1] Mr. Pennington cites no evidence in the record demonstrating that he is Caucasian. (*See* docs. 58, 56). However, because the court may construe factual inferences in his favor, and because Mr. Pennington alleges in his complaint that he is Caucasian, the court will assume that Mr. Pennington is Caucasian. (Doc. 27 at 1).

inmates. (Doc. 43-6 at 8–9, 14–15).[2] Mr. Pennington told the nurse that his nose and jaw were broken, but she told him that nothing was broken and that he was just trying to leave the jail. (Doc. 43-1 at 33). Mr. Pennington repeatedly expressed to jail personnel that he needed to go to the hospital for his injuries. (*Id.* at 33–34). Jail personnel did not take Mr. Pennington to the hospital despite his requests. (*Id.* at 35). Four days after the assault, Mr. Pennington's mother bailed him out of jail and took him to the University of Alabama at Birmingham West Emergency Department. (*Id.* at 34). Two weeks later, Mr. Pennington had surgery to repair his jaw and lost three teeth in the surgery. (Doc. 43-1 at 34, 39).

According to the Tuscaloosa County Jail Policy and Procedure Directives, various services are available to inmates for twenty-four hours a day, including "[j]ail staff trained in [f]irst [a]id . . . and [e]mergency [p]rocedures." (Doc. 43-6 at 71). Sheriff Abernathy, as Sheriff of Tuscaloosa County, is ultimately responsible for training jail staff to deliver these services to inmates. (*Id.* at 5). Moreover, the Tuscaloosa County Jail Inmate Classification Policy charges Sheriff Abernathy with ensuring the safety of inmates. (*Id.* at 73). And the Tuscaloosa County Jail Security Equipment Inspections Policy requires Sheriff Abernathy to maintain "all security

---

[2] Mr. Pennington disputes these facts on the ground that he has no personal knowledge of them. (Doc. 58 at 4). But his own knowledge is irrelevant, so long as the witness testifying to the facts has personal knowledge. *See* Fed. R. Evid. 602. Sheriff Abernathy testified to these facts in his deposition, and Mr. Pennington does not assert that Sheriff Abernathy lacks personal knowledge. (Doc. 43-6 at 8–9, 14–15).

devices and equipment [] in operational and in good working condition" by appointing a "Security Officer [to] inspect all [s]ecurity [f]acilities and [d]evices" weekly. (Doc. 43-6 at 90).

The Tuscaloosa County Jail is often overcrowded, housing 650 or more inmates despite having a maximum capacity of 540 inmates. (Doc. 56-1 at 8). There are at least four detention officers who watch monitors in various control rooms and three rovers who patrol assigned areas in the jail. (Doc. 43-6 at 18–19). Mr. Pennington testified that at the time of the assault, the video camera that would have captured the area of Dorm 11 where he was assaulted did not appear to be operational based on the way it was sitting on the wall. (Doc. 43-1 at 38). Detention officers reviewed the video camera footage at the time of the assault but were "unable to see an altercation due to the camera view not being clear." (Doc. 56-1 at 95; doc. 43-10 at 2). Despite a notice of claim that Mr. Pennington filed with the Administrator of Tuscaloosa County two months after the assault, Tuscaloosa County could not find the video footage from the assault during discovery, meaning that the footage was not preserved. (Doc. 56-1 at 78).

Mr. Pennington never met or saw Sheriff Abernathy while detained in the Tuscaloosa County Jail. (Doc. 43-1 at 35). And Sheriff Abernathy testified that he had not heard of Mr. Pennington until after the lawsuit was filed in September 2022, almost two years after the assault of Mr. Pennington. (Doc. 43-6 at 16).

## II.    DISCUSSION

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

### 1.    Spoliation

Mr. Pennington argues that under Federal Rule of Civil Procedure 37(e), the court should "den[y] [summary judgment] due to [defendants'] failure to preserve the surveillance video" capturing the assault of Mr. Pennington. (Doc. 57 at 14; doc. 58 at 19, 21). Mr. Pennington contends that this video footage "would have established that [d]efendant[s] had notice of the first assault, the conditions that led to it[,] and did nothing." (Doc. 58 at 21). For that reason, he asserts that he "is entitled at this stage of the proceeding to the benefit of an adverse inference that the video was not preserved because it contained evidence unfavorable to the [d]efendant." (*Id.*). Additionally, Mr. Pennington requests several sanctions related to jury instructions, the introduction of evidence at trial related to defendants' failure to preserve the footage, a presumption in favor of Mr. Pennington, and an adverse inference against defendants. (*Id.* at 22).

"Rule 37(e) creates a two-tiered sanctions regime—with lesser sanctions under Rule 37(e)(1) and more severe sanctions under Rule 37(e)(2)." *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1311 (11th Cir. 2023). There are "preconditions" to each tier. *Id.* First, there must be "electronically stored information [("ESI")] that should have been preserved in the anticipation or conduct of litigation" which was "lost because a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e). And second, the ESI must be information that "cannot be restored or replaced through additional discovery." *Id.* If those two preconditions are met, the court may sanction under Rule 37(e)(1) if there is a finding of prejudice, or Rule 37(e)(2) if, regardless of prejudice, "the party acted with the intent to deprive another party of the information's use in the litigation." *Id.* The Eleventh Circuit recently held that this "intent to deprive standard is the same as the bad faith standard [it] has used in other spoliation contexts." *Skanska*, 75 F.4th at 1312.

First, the court finds that Mr. Pennington meets the preconditions to Rule 37(e): the video footage was ESI that should have been preserved in anticipation of litigation but was lost because the defendants failed to reasonably preserve it. Fed. R. Civ. P. 37(e). To support the fact that defendants should have known that the video footage was ESI relevant to potential litigation, Mr. Pennington cites his notice of claim against Sheriff Abernathy and "all Tuscaloosa County

Sheriff Department deputies and other staff [and officials] on duty at the Tuscaloosa County Detention Facility on the evening of October 3, 2020," sent to "the Administrator of Tuscaloosa[] County, Alabama on December 29, 2020." (Doc. 58 at 11; doc. 43-6 at 76–82).

In Tuscaloosa County's reply, it asserts that Mr. Pennington did not discuss malfunctioning video cameras in his initial complaint. (Doc. 59 at 2). Further, Mr. Pennington did not file his amended complaint, in which he did discuss the issue, until three years after the assault, and one year after the footage would have been automatically deleted. (*Id.*). But Mr. Pennington's notice of claim, sent only two months after the incident (doc. 43-6 at 81–82), mentions "[in]adequate supervision and surveillance," (*id.* at 78), and expresses doubts that the video cameras were operational (*id.* at 79) ("even assuming the cameras were operational"). Moreover, neither defendant objects to the fact that the ESI could have been preserved with reasonable steps, or that additional discovery cannot restore or replace the information. (*See generally* docs. 58, 59). The court finds that the preconditions to Rule 37(e) are met.

Second, the court will consider whether spoliation sanctions are warranted under Rule 37(e)(1), requiring prejudice to Mr. Pennington; or Rule 37(e)(2), requiring intent to deprive. Mr. Pennington argues for sanctions under both tiers because he was prejudiced under Rule 37(e)(1) (doc. 58 at 21), and Defendants acted

with intent to deprive under Rule 37(e)(2) (*id.* at 19). Sheriff Abernathy argues that Mr. Pennington was not prejudiced because "[e]ven if the video were to have shown everything [p]laintiff desired, it could not defeat Sheriff Abernathy's [m]otion for [s]ummary [j]udgment." (Doc. 60 at 10). And Tuscaloosa County, as explained above, argues that it was not on notice that the video footage was relevant to the pending litigation. (Doc. 59 at 2).

The court does not find Tuscaloosa County's explanation persuasive for the reasons mentioned above. But Mr. Pennington does not cite to evidence in his response that supports the fact that Defendants acted in bad faith as opposed to with mere negligence. (Doc. 58 at 19–22). For example, in *Skanska*, the Eleventh Circuit affirmed a district court's entry of spoliation sanctions because the district court was "highly skeptical of a claim that evidence was unintentionally destroyed pursuant to a routine policy after a request that the evidence be preserved." *Skanska*, 75 F.4th at 1314 (quotation marks omitted). Mr. Pennington cites to no evidence that such a request was made, even if there are brief references to "surveillance" and "video cameras" in his notice of claim. (Doc. 43-6 at 78–79). The facts here do not rise to a finding of bad faith.

Additionally, the court does not find that Mr. Pennington was prejudiced under Rule 37(e)(1). In light of the court's analysis below, even if the video footage depicted the assault, a delayed response by jail staff, and understaffing at the time of

the assault, the footage would not create a dispute of material fact about whether Sheriff Abernathy was subjectively reckless as to Mr. Pennington's Fourteenth Amendment rights, *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc), or whether Sheriff Abernathy "had actual or constructive notice that a particular omission in the[] training program cause[d] [his] employees to violate citizens' constitutional rights," *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quotation marks omitted). The court does not find that the lack of preservation of video footage depicting Mr. Pennington's assault warrants spoliation sanctions under Rule 37(e).

### 2.    Federal Claims Against Sheriff Abernathy (Counts One Through Eight)

Mr. Pennington alleges that Sheriff Abernathy, in his official and individual capacities, violated his constitutional rights. (Doc. 27 ¶¶ 32–89). For the reasons set out below, Mr. Pennington's federal claims against Sheriff Abernathy in his official and individual capacities do not survive summary judgment.

#### a.    *The Eleventh Amendment Bars Official Capacity Claims Against Sheriff Abernathy*

Mr. Pennington's claims against Sheriff Abernathy in his official capacity are:

(1) Sheriff Abernathy violated the Fourth Amendment's prohibition of unreasonable seizures and the Fourteenth Amendment's right to due process by failing to protect pretrial detainees from unreasonable seizures ("Count Four");

(2) Sheriff Abernathy violated the Fourth Amendment's prohibition of unreasonable seizures and the Fourteenth Amendment's right to due process by failing to provide adequate medical care to pretrial detainees ("Count Six"); and

(3) Sheriff Abernathy violated Mr. Pennington's Fourth and Fourteenth Amendment due process rights to life by placing him in a dangerous and life-threatening situation without adequate medical care ("Count Eight").

(Doc. 27 ¶¶ 58–65, 70–73, 82–89). He seeks monetary damages, injunctive relief, and a declaratory judgment. (Doc. 27 at 31–33).

Sheriff Abernathy moves for summary judgment on these official capacity claims on the ground that the Eleventh Amendment bars suits against Alabama sheriffs for money damages, and that Mr. Pennington has not shown an ongoing violation that would warrant an award of prospective relief. (Doc. 27 at 23–25). The court agrees.

"Eleventh Amendment immunity bars suits brought in federal court [for retrospective relief] when the State itself is sued and when an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc). An Alabama sheriff in his official capacity is considered an arm of the State. *Carr v. City of Florence*, 916 F.2d 1521 (11th Cir. 1990). Because Mr. Pennington seeks monetary damages (doc. 27 at 32), a form of retrospective relief, against Sheriff Abernathy in his official capacity, the Eleventh Amendment bars those claims.

But the Eleventh Amendment permits a plaintiff to seek prospective injunctive or declaratory relief against an official in his official capacity to prevent a continuing violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908); *Green v. Mansour*, 474 U.S. 64, 73 (1985) (holding that the prospective relief "would have much the same effect as a full-fledged award of damages or restitution by the federal court," then it is "prohibited by the Eleventh Amendment."). And Mr. Pennington, in addition to his requests for money damages, requests injunctive and declaratory relief. (Doc. 27 at 31–33).

Sheriff Abernathy argues that as a matter of law, Mr. Pennington's requests for declaratory and injunctive relief fail because Mr. Pennington has cited no evidence of any ongoing policy, practice, or procedure that would warrant an award of prospective relief. (Doc. 47 at 25). Mr. Pennington does not address Sheriff Abernathy's argument in his response. (*See* doc. 58). And Mr. Pennington's claims against Sheriff Abernathy in his amended complaint focus exclusively on the assault of Mr. Pennington while he was in confinement, which is not ongoing. (Doc. 27 ¶¶ 58–65, 70–73, 82–89). The court agrees with Sheriff Abernathy that Mr. Pennington has neither pleaded nor cited to evidence of an ongoing violation that would permit declaratory or injunctive relief, so *Ex parte Young* does not apply.

Accordingly, the court **WILL DISMISS** Counts Four, Six, and Eight **WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

          *b.*    *The Individual Capacity Claims Fail Under Deliberate Indifference and Supervisory Liability Theories*

Mr. Pennington's claims against Sheriff Abernathy in his individual capacity are:

> (1) Sheriff Abernathy violated the Fourth Amendment's prohibition of unreasonable seizures and the Fourteenth Amendment's right to due process by failing to provide adequate protection to pretrial detainees under ("Counts One and Two"[3]);
>
> (2) Sheriff Abernathy violated the Fourth Amendment's prohibition of unreasonable seizures and the Fourteenth Amendment's right to due process by failing to protect pretrial detainees from unreasonable seizures ("Count Three");
>
> (3) Sheriff Abernathy violated the Fourth Amendment's prohibition of unreasonable seizures and the Fourteenth Amendment's right to due process by failing to provide adequate medical care to pretrial detainees ("Count Five"); and
>
> (4) Sheriff Abernathy violated Mr. Pennington's Fourth and Fourteenth Amendment due process rights to life by placing him in a dangerous and life-threatening situation without adequate medical care ("Count Seven").

(Doc. 27 ¶¶ 32–57, 66–69, 74–81).

As an initial matter, Sheriff Abernathy argues that the Fourth Amendment is inapplicable (doc. 47 at 17), to which Mr. Pennington does not object (*see generally* doc. 58 at 15, 19) (responding only to Sheriff Abernathy's arguments for summary

---

[3] The court finds no material distinction between the first and second counts and will therefore analyze them together. (*See* doc. 27 ¶¶ 32–49).

judgment on Mr. Pennington's Fourteenth Amendment claims). Mr. Pennington has therefore abandoned any Fourth Amendment claims. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). In any event, Mr. Pennington pleaded Count Seven as a violation of Mr. Pennington's "right to due process of law as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States." (Doc. 27 ¶ 89). But the Fourth Amendment does not contain a due process clause. *See* U.S. Const. amend. IV; (*see also* doc. 47 at 17). Thus, the court **WILL GRANT** Sheriff Abernathy's motion for summary judgment on Counts One, Two, Three, Five, and Seven with respect to any Fourth Amendment claim.

Sheriff Abernathy moves for summary judgment on the Fourteenth Amendment claims on the ground that he is entitled to qualified immunity. (Doc. 47 at 16–21). Qualified immunity "protects an officer unless at the time of the officer's supposedly wrongful act the law was already established to such a high degree that every objectively reasonable officer in his place would be on notice that what he was doing was clearly unlawful given the circumstances." *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (quotation marks omitted). Only "the plainly incompetent" or those who knowingly violate federal law are not entitled to qualified immunity. *Id.* (quotation marks omitted). The defense involves a burden-shifting analysis in which the defendant must first show that he was acting within the scope of his discretionary authority at the time of the alleged violation. *Jarrard*

*v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1323 (11th Cir. 2024). Then the burden shifts to the plaintiff to demonstrate that the defendant violated the plaintiff's constitutional right, and "that the right was clearly established at the time of the challenged conduct." *Id.* The parties agree that Sheriff Abernathy was acting within the scope of his discretionary authority (doc. 47 at 17; doc. 58 at 14), so the court will begin with Mr. Pennington's burden.

The federal law at issue is the Fourteenth Amendment's Due Process Clause, which "guarantees pretrial detainees the right to basic necessities that the Eighth Amendment guarantees to convicted persons." *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008). A defendant violates an individual's rights when the defendant acts with deliberate indifference, meaning the defendant was "subjectively aware" that his "own conduct put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1258. The deliberate indifference standard is equivalent to "subjective recklessness as used in the criminal law." *Id.* at 1255. Therefore, the relevant question is whether Mr. Pennington has demonstrated that Sheriff Abernathy acted with such subjective recklessness.

Mr. Pennington cites no evidence of Sheriff Abernathy's subjective awareness of the failures to protect Mr. Pennington from inmate-on-inmate violence or to provide adequate medical care to Mr. Pennington after the assault. (*See* doc. 58 at 13–19). Indeed, Mr. Pennington has never met or seen Sheriff Abernathy. (Doc. 47

at 14; doc. 58 at 3). And Sheriff Abernathy had never heard of Mr. Pennington until the lawsuit was filed, nearly two years after the assault on Mr. Pennington. (Doc. 43-6 at 16; doc. 47 at 19). Mr. Pennington has not created a genuine dispute of material fact about Sheriff Abernathy's subjective recklessness.

In addition to the claims of Sheriff Abernathy's personal involvement, Counts Five and Seven of Mr. Pennington's amended complaint assert supervisory liability claims against Sheriff Abernathy. (Doc. 27 ¶¶ 66–69, 78–79). Mr. Pennington argues that Sheriff Abernathy failed to train his employees to provide adequate medical treatment after putting Mr. Abernathy in a "life-threatening situation" due to the national racial tension created by George Floyd's death. (*See* doc. 27 ¶ 66–69, 74–81).[4]

Supervisory officials cannot be held liable under § 1983 on a theory of *respondeat superior*. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). Instead, to hold a supervisor liable under § 1983 on a failure-to-train theory, the plaintiff "must demonstrate that the supervisor had actual or constructive notice that a particular omission in their training program cause[d] [his] employees to violate citizens' constitutional rights, and that armed with that knowledge[,] the supervisor

---

[4] Mr. Pennington's response in opposition to summary judgment raises additional supervisory liability claims not included in his amended complaint, such as Sheriff Abernathy's supervisory liability for an overcrowded jail and malfunctioning monitoring devices. (*Compare* doc. 58 at 13, 16 *with* doc. 27 ¶ 66–69, 74–81). "A plaintiff may not amend h[is] complaint through argument in a brief opposing summary judgment," *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Therefore, the court will not consider these claims.

chose to retain that training program." *Keith*, 749 F.3d at 1052 (quotation marks omitted). This notice requires the plaintiff to establish "a pattern of similar constitutional violations by untrained employees." *Id.* at 1053.

Mr. Pennington does not allege or establish "a pattern of constitutional violations by untrained employees." *Id.* His isolated assault "did not provide the requisite notice to Sheriff [Abernathy] that the training provided to detention officers was constitutionally deficient." *Id.* And even assuming that Mr. Pennington did establish notice of other constitutional violations, Mr. Pennington does not cite to any evidence suggesting that Sheriff Abernathy retained a defective training program following such notice. That is, Mr. Pennington does not cite to training policies or procedures implemented by Sheriff Abernathy that are constitutionally defective. Mr. Pennington only cites to isolated conduct by jail staff that he alleges was constitutionally defective.

As a matter of law, Mr. Pennington's claims that Sheriff Abernathy acted with deliberate indifference as to Mr. Pennington's Fourteenth Amendment Due Process rights fail. Accordingly, the court **WILL GRANT** Sheriff Abernathy summary judgment as to these claims and **WILL ENTER SUMMARY JUDGMENT** on Counts One, Two, Three, Five, and Seven.

3.    Federal Claims Against Fictitious Defendants (Counts Nine Through Twelve)

The court previously dismissed Mr. Pennington's claims against fictitious defendants for failing to adequately describe them. (Doc. 26 at 5–6). Mr. Pennington then amended his complaint, adding four new federal claims against fictitious defendants. (*See* doc. 27 ¶¶ 90–117). As the court stated in its opinion dismissing Mr. Pennington's previous claims, "fictitious-party pleading is not [generally] permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). An exception exists for claims that "adequately describe the person to be sued so that the person c[an] be identified for service." *Dean v. Barber*, 951 F.2d 1210, 1215 n.6 (11th Cir. 1992). This description must be "so specific that using the defendant's proper name is at the very worst, surplusage." *Richardson*, 598 F.3d at 738 (quotation marks omitted).

The amended complaint's descriptions of the fictitious defendants, deputy sheriffs and the duty nurse, are still insufficient. Mr. Pennington only describes them as "Defendants Tuscaloosa County Detention Center Officials (Deputy Sheriff(s))" and "(Duty Nurse)." (Doc. 27 at 21, 23–25). And Mr. Pennington's amended complaint does not identify the perceived gender of the duty nurse, even though he only brings claims against the one nurse who treated him after the assault. (*Id.* at 24–25 ("in his/her Official Capacity" and "in his/her Individual Capacity"); *see also id.* ¶¶ 107, 114 ("s/he")). Moreover, Mr. Pennington never moved to amend his

complaint a second time to include the identities or more detailed descriptions of the fictitious defendants. And finally, Mr. Pennington did not respond to Sheriff Abernathy's argument against the fictitious defendant claims in his brief for summary judgment, where Mr. Pennington could have cited to evidence describing the fictitious defendants' identities. (*See* doc. 47 at 25–26; *see also* doc. 58).

Accordingly, the court **WILL DISMISS** Counts Nine, Ten, Eleven, and Twelve against the fictitious defendants **WITH PREJUDICE**.

### 4. State Claims Against Sheriff Abernathy, Fictitious Defendants, and Tuscaloosa County (Counts Thirteen Through Sixteen)

Mr. Pennington also brought various state law claims against all defendants. ("Counts Thirteen, Fourteen, Fifteen, and Sixteen"; doc. 27 ¶¶ 118–144). But given the court's dismissal of all federal claims in the case, there is no longer an independent basis for jurisdiction over Mr. Pennington's state law claims against Sheriff Abernathy, the fictitious defendants, and Tuscaloosa County.

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the court **WILL DECLINE** to exercise supplemental jurisdiction over these claims and **WILL DISMISS** Counts Thirteen, Fourteen, Fifteen, and Sixteen **WITHOUT PREJUDICE**. The court **WILL DENY AS MOOT** Sheriff Abernathy's motion for summary judgment as to the state law claim against him (doc. 47 at 26–28), as well as Tuscaloosa County's motion for summary judgment (doc. 46).

## III.    CONCLUSION

The Eleven Amendment bars Mr. Pennington's federal claims against Sheriff Abernathy in his official capacity, so the court **WILL DISMISS** those claims **WITHOUT PREJUDICE**. Additionally, the court **WILL GRANT** Sheriff Abernathy's motion for summary judgment as to Mr. Pennington's federal claims against Sheriff Abernathy in his individual capacity. The court **WILL ENTER SUMMARY JUDGMENT** in favor of Sheriff Abernathy on those claims. And the court **WILL DISMISS** Mr. Pennington's federal claims against fictitious defendants **WITH PREJUDICE** for failure to sufficiently describe such fictitious defendants.

The court **WILL DECLINE** to exercise supplemental jurisdiction over the remaining state law claims and **WILL DISMISS** them **WITHOUT PREJUDICE**. Finally, the court **WILL DENY AS MOOT** Sheriff Abernathy's motion for summary judgment on the state law claim against him and Tuscaloosa County's motion for summary judgment. The court will enter a separate final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this November 26, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE